## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**MARVIN WILSON, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                   **NO. 17-376-SDD-EWD**

**CB&I FEDERAL SERVICES, LLC, ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 21, 2018 .

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

MARVIN WILSON, ET AL.                                    CIVIL ACTION

VERSUS                                                   NO. 17-376-SDD-EWD

CB&I FEDERAL SERVICES, LLC, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand, filed by Marvin Wilson, Richard Wilson and Betty Lee (collectively, "Plaintiffs").[1]  The Motion is opposed by CB&I Federal Services, LLC ("CB&I")[2] and Plaintiffs have filed a Reply.[3]  For the following reasons, the undersigned recommends[4] that the Motion be **DENIED**.

## I.  Background

### A.  Plaintiffs' Petition for Damages

On or about May 10, 2017, Plaintiffs filed a Petition for Damages in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, against CB&I, Lexington Homes, Inc., D&D Maintenance, LLC, The Bard Manufacturing Company, Inc., and each of their respective insurers.[5]  Plaintiffs assert that their brother, Everett Wilson, had been displaced from his home due to the August 2016 flooding event in Baton Rouge (the "Baton Rouge Flood"), and was living in a temporary housing unit (trailer) provided by the Federal Emergency Management

---

[1] R. Doc. 11.

[2] R. Doc. 17.

[3] R. Doc. 22.

[4] The Fifth Circuit has held that, "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to de novo review."  *Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 765 (5th Cir. 2016).  As such, a report and recommendation, rather than a ruling, is being issued relative to the instant Motion.

[5] R. Doc. 1-1 at pp. 1-8.

Agency ("FEMA").[6]  FEMA had purchased such trailers from Lexington Homes, Inc. to be used as housing for citizens displaced by the Baton Rouge Flood.  Plaintiffs allege that on or about October 25, 2016, their 84-year-old brother, Everett Wilson,[7] was found dead on his bed inside his FEMA trailer and that the cause of death was hyperthermia.[8]  Plaintiffs assert that the temperature of the room where Wilson was found was 124.4 degrees Fahrenheit and that the temperature of the air being expelled from the air conditioning and heating vent above his bed was 135 degrees Fahrenheit, even though the thermostat inside the trailer read 50 degrees Fahrenheit.[9]  According to the Plaintiffs, when investigators attempted to turn off the air conditioning and heating unit in Wilson's trailer using the wall thermostat, the unit continued to forcefully blow hot air into the trailer.  Plaintiffs allege that in the month before Wilson's death, numerous calls and complaints were made regarding his trailer, but no repairs were made to the air conditioning and heating system.

Plaintiffs further allege that the named defendants are responsible for the failure of the air conditioning and heating system and thermostatic controls inside Wilson's FEMA trailer. Plaintiffs allege that CB&I was negligent in the installation, inspection, preparation and set-up of Wilson's FEMA trailer, and was negligent in performing the ready for occupancy inspection and report on the trailer prior to its release to and occupancy by Wilson.  Plaintiffs also allege that CB&I was negligent in failing to properly establish call lines for FEMA trailer residents to report problems with their trailers, failing to properly advertise or provide notice to residents of the call lines, failing to properly monitor the call lines, failing to assign repair workers and failing to follow-up on the task orders for reported problems and/or repairs needed for the FEMA trailers,

---

[6] R. Doc. 1-1 at p. 2, ¶ 5.
[7] *See*, R. Doc. 11-1 at p. 1.
[8] R. Doc. 1-1 at p. 2, ¶ 6.
[9] R. Doc. 1-1 at p. 2, ¶¶ 4-7.

and that these actions contributed to Wilson's death.[10]  Plaintiffs seek the damages sustained by Wilson under the Louisiana survival action statute, La. Civ. Code art. 2315.1, including the pain and suffering sustained by Wilson prior to his death.[11]  Plaintiffs also seek damages under Louisiana's wrongful death statute, La. Civ. Code art. 2315.2, including all pecuniary damages, such as funeral expenses, and nonpecuniary damages, such as the loss of love, affection, companionship, care, attention, nurture, guidance, society, consortium and loss of support from their brother.[12]

### B.  CB&I's Notice of Removal and the Motion to Remand

CB&I removed the matter to this Court on June 14, 2017 pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute.[13]  CB&I asserts that removal is proper under § 1442(a)(1) because the allegations in the Petition pertain to work performed by CB&I pursuant to a federal contract between FEMA and CB&I, such that CB&I was "acting under" color of federal authority when performing the work at issue.[14]

Plaintiffs have filed a Motion to Remand, asserting that the Court lacks subject matter jurisdiction because CB&I's actions in this matter do not qualify as "acting under" a federal officer, as required by 28 U.S.C. § 1442(a)(1).[15]  Relying upon two prior cases from the Eastern District

---

[10] *See*, R. Doc. 1-1 at p. 3, ¶¶ 10-13.  Plaintiffs also allege that Lexington Homes, Inc. was negligent in its manufacture, repair, construction and/or design of Wilson's FEMA trailer and its component parts, including the air conditioning and heating systems and thermostatic controls; that D&D Maintenance, LLC was negligent in failing to properly and timely respond to service and maintenance requests on Wilson's trailer; and that The Bard Manufacturing Company, Inc. was negligent in its manufacture, repair construction and/or design of the air conditioning and heating systems, including thermostatic controls, in Wilson's trailer.  *Id*. at pp. 3-5, ¶¶ 14-19.  Plaintiffs allege that the negligence of these defendants also caused and/or contributed to Wilson's death.  *Id*.  Plaintiffs assert a claim under the Louisiana Products Liability Act, La. R.S. 9:2800.51, *et al.*, against Lexington Homes, Inc., the manufacturer of Wilson's trailer and its component parts, and The Bard Manufacturing Company, Inc., the manufacturer of the air conditioning and heating unit and the thermostatic controls in Wilson's trailer.  *Id.* at p. 5, ¶¶ 20 and 21.
[11] *Id.* at pp. 5-6, ¶ 22.
[12] *Id.* at p. 6, ¶ 23.
[13] R. Doc. 1.
[14] *Id.* at ¶ 9.
[15] R. Doc. 11-1 at pp. 1-2.

of Louisiana, Plaintiffs argue that CB&I has failed to show that a federal officer exercised direct and detailed control over CB&I, as required to trigger the federal officer removal statute.[16]  CB&I opposes the Motion to Remand, maintaining that removal was proper under § 1442(a)(1) based on controlling Fifth Circuit precedent, specifically *Zeringue v. Crane Co.*, 846 F.3d 785 (5th Cir. 2017), wherein the court held that such direct and detailed control was not required to satisfy the "acting under" requirement.[17]  In reply, Plaintiffs assert CB&I's liability does not stem from its compliance with reasonably precise government specifications.[18]  Plaintiffs further assert that the Petition alleges CB&I's failure to maintain Wilson's trailer caused Wilson's death, and that CB&I had total control over the maintenance of FEMA trailers under its contract with FEMA.[19]

**II.  Law and Analysis**

To establish jurisdiction under the federal officer removal statute, a defendant must show the following: (1) that it is a person within the meaning of the statute, (2) that it has 'a colorable federal defense,' (3) that it 'acted pursuant to a federal officer's directions,' and (4) 'that a causal nexus exists between [its] actions under color of federal office and the plaintiff's claims.'" *Zeringue v. Crane Co.*, 846 F.3d 785, 789 (5th Cir. 2017) (internal citations omitted).  *See also, Crutchfield v. Sewerage and Water Board of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016) (explaining that the federal officer removal statute "creates federal jurisdiction even over cases brought against private parties if they are sued for conduct they committed under the direction of federal authorities and for which they have a colorable defense under federal law.").  Although the federal officer removal statute is liberally construed, the defendant bears the burden of showing

---

[16] *Id.* at p. 6 (citing *Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664, 671-72 (E.D. La. 2007); *Breaux v. Gulf Stream Coach, Inc.*, Civ. A. No. 08-893, 2009 WL 152109 (E.D. La. Jan. 21, 2009)).
[17] R. Doc. 17.
[18] R. Doc. 22 at p. 1.
[19] R. Doc. 22.

that removal is proper under the statute. *Bartel v. Alcoa S.S. Co., Inc*., 805 F.3d 169, 172 (5th Cir. 2015).

### 1.  CB&I Is a "Person" Under 28 U.S.C. § 1442(a)

"[T]he Supreme Court has long recognized that the removal statute also applies to private persons and corporate entities 'who lawfully assist' the federal officer 'in the performance of his official duty.'" *Savoie v. Huntington Ingalls*, 817 F.3d 457, 461 (5th Cir. 2016) (citing *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 151, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007)). Plaintiffs do not contest that CB&I is a person within the meaning of the federal officer removal statute.[20]  Accordingly, the first element is satisfied.

### 2.  CB&I Has Established That It Was "Acting Under" a Federal Official

The Supreme Court has made it clear that the words "acting under" are broad and are to be liberally construed; however, their interpretation must be limited by the statute's "language, context, history, and purposes." *Watson*, 551 U.S. at 147, 127 S.Ct. at 2305.  Significantly, the Supreme Court has held that "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone.  A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phase 'acting under' a federal 'official.'" *Id.*, 551 U.S. at 153, 127 S.Ct. at 2308.  "A private entity is acting under the direction of a federal officer where it 'fulfilled the terms of a contractual agreement by providing the Government with a product that it used to help conduct a war' and arguably 'performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform.'" *Weis v. DSM Copolymer, Inc.*, 160 F. Supp. 3d 954, 963 (M.D. La. 2016) (quoting *Watson*, 551 U.S. at 153-154, 127 S.Ct. 2301).  *See also, Wilde v. Huntington Ingalls,*

---

[20] *See*, R. Doc. 11-1 at p.4 ("There is no dispute that CB&I meets the 'person' definition to satisfy the first factor of the federal officer removal statute.").

*Inc.*, 616 Fed. Appx. 710, 713 (5th Cir. 2015) ("in order to be 'acting under' the color of federal authority in the context of federal contractor immunity, the Supreme Court has looked to whether the contractor 'is helping the Government to produce an item that it needs . . . [or is] perform[ing] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform.'").

Although district courts in this Circuit have previously applied the "direct and detailed control" test cited by Plaintiffs in the Motion to Remand, the Fifth Circuit recently clarified that, "Direct oversight of the specific acts that give rise to a plaintiff's complaint is not required to satisfy this part of § 1442." *Zeringue v. Crane Co.*, 846 F.3d 785, 792 (5th Cir. 2017). However, "the Supreme Court has clarified that [the words "acting under"] 'must refer to . . . a relationship that involves acting in a certain capacity, considered in relation to one holding a superior position or office.'" *Id.* (quoting *Watson*, 551 U.S. at 151, 127 S.Ct. 2301) (internal quotation omitted). Further, "this relationship 'typically involves "subjection, guidance, or control," but, at a minimum, it 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Zeringue*, 846 F.3d at 792 (citing *Watson*, 551 U.S. at 151, 127 S.Ct. 2301).

CB&I asserts that pursuant to its contract with FEMA, Contract No. HSFEHQ-09-D-0698 (the "Base Contract), on August 23, 2017,[21] FEMA issued Task Order No. HSFE06-16-J-0233, which Task Order provided for the hauling and installation of FEMA trailers, the inspection and maintenance of the FEMA trailers and the operation of a maintenance call line for the FEMA trailers following the Baton Rouge Flood.[22] CB&I asserts that the Base Contract and the Task Order show that it acted pursuant to the supervision, control and guidance of FEMA in installing,

---

[21] Although CB&I states that the Task Order at issue was issued by FEMA on August 23, 2017, this appears to be a clerical error, as the purported Task Order attached to the Notice of Removal as "Exhibit C" is dated August 23, 2016. *See*, R. Doc. 1-3. The undersigned notes that the Baton Rouge Flood occurred in August 2016.
[22] R. Doc. 1 at ¶ 9 (*citing* R. Docs. 1-2 and 1-3).

inspecting and operating FEMA trailers and operating maintenance call lines after the Baton Rouge Flood.[23] CB&I alleges that FEMA directed CB&I to undertake FEMA's Stafford Act-related work in Louisiana, and had CB&I or another contractor not done so, FEMA would have been tasked with hauling, installing, inspecting and maintaining its trailers, as well as setting up and operating the resident call lines. Thus, under the precedent set by this Court and the Fifth Circuit, CB&I contends it "acted under" FEMA's direction for purposes of § 1442(a)(1).[24]

The Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121, *et seq.* (the "Stafford Act"), was enacted by Congress to "provide an orderly and continuing means of assistance by the Federal government to State and local governments in carrying out their responsibilities to alleviate the suffering and damage which result from" disasters. The Stafford Act gives FEMA responsibility for coordinating government-wide relief efforts. ("The President is authorized to establish a program of disaster preparedness that utilizes services of all appropriate agencies . . . .") 42 U.S.C. § 5131. FEMA provides assistance to individuals and households through the Individual Assistance program based on the Stafford Act provisions for federal assistance to individuals and households in cases of a major disaster. 42 U.S.C. § 5174. The Base Contract is replete with references to the fact that FEMA is contracting to facilitate FEMA's implementation of the Individual Assistance program and other Stafford Act duties. *See e.g.*, ¶¶ 1.0, 3.0, 5.0.

In *Zeringue v. Crane Co.*, the Fifth Circuit analyzed the "acting under" requirement for federal officer removal. 846 F.3d 785 (5th Cir. 2017). There, the Court relied on an unpublished decision in *Wilde v. Huntington Ingalls, Inc.*, 616 Fed. Appx. 710 (5th Cir. 2015), to find that the federal contractor in question was acting under a federal officer. *Zeringue*, 846 F.3d at 792. In

---

[23] R. Doc. 1 at ¶ 13.
[24] *Id.* at pp. 12-13 (citing *Weis*, 160 F. Supp. 3d at 963; *Zeringue*, 846 F.3d at 792; *Wilde*, 616 Fed. Appx. at 713).

*Wilde*, the contractor alleged that during the time period when the plaintiff was exposed to asbestos, the contractor was producing ships pursuant to the direction of the United States Maritime Commission. 616 Fed. Appx. at 713. The *Wilde* Court found that the mere fact the federal government would have had to build those ships had the contractor not done so was sufficient to satisfy the acting under requirement of the federal officer removal statute. *Id*. Importantly, in *Zeringue*, while the Court first noted that the military specifications and affidavits the contractor provided suggested that the government "exercised a significant degree of guidance and control" over the contractor; the Court ultimately held that a showing of such control is not necessary to establish the "acting under" requirement:

> Even absent this significant degree of oversight, the Navy directed [the contractor] to build parts, and, had [the contractor] not done so, the Navy would have had to build those parts instead. In accordance with our duty to avoid "a narrow grudging interpretation of § 1442(a)(1)," we conclude that the facts in the record before us are sufficient to establish that [the contractor] was "acting under" the Navy.

The same result is required here. The Base Contract was the mechanism by which FEMA contracted with CB&I to undertake disaster relief related work that FEMA otherwise would have had to do under the Stafford Act. Accordingly, CB&I meets the "acting under" requirement for federal officer removal.

Nonetheless, even if substantial oversight and supervision by FEMA were required to meet the "acting under" requirement, CB&I asserts FEMA exercised that level of control over its actions. Relying upon provisions in the Base Contract and the Declaration of Michael L. Means, CB&I's "Task Order Manager for the August 2016 Flood relief effort in Louisiana,[25] CB&I asserts that in addition to selecting the particular trailers to be installed, the site for installation and the

---

[25] R. Doc. 17-2 at ¶ 3.

recipients of the trailers, FEMA designated the sequence of work to be performed at installation and supervised and controlled the process by its review and inspection of each trailer installed.[26] According to CB&I, a FEMA technical monitor conducted an inspection of each trailer alongside a CB&I foreman, and the FEMA technical monitor completed a detailed Temporary Housing Unit Inspection Report for FEMA's review, which provided for inspection of the trailer's appliances, including the HVAC system.[27] CB&I asserts that a successful inspection was required to be documented on FEMA Form 90-13 and subsequently transmitted to the field operations center for processing and invoicing.[28] CB&I claims that FEMA used a "Ready for Occupancy Checklist" to determine whether each item of the trailer installation (placement, utilities, entry, appliances, etc.) was working properly and required CB&I to certify that each FEMA-designated item had been completed and inspected, so that the trailer was ready for occupancy and could be licensed by FEMA to an applicant.[29]

CB&I further asserts that when or if a deficiency or issue arose during inspection, FEMA would issue work orders that required CB&I to perform pre-determined maintenance on trailers that FEMA identified.[30] Similarly, if an appliance or part was found to be defective during the installation process, FEMA supplied CB&I with a replacement appliance or part from FEMA's staging yard.[31] CB&I asserts that if parts or appliances were found to be defective or inoperable, FEMA required CB&I to submit a cost proposal of the part's price and the cost for replacement labor. CB&I claims that FEMA also monitored the maintenance hotline, regularly notified CB&I immediately if problems arose and required CB&I to address any issues.[32]

---

[26] R. Doc. 17 at p. 15 (*citing* R. Doc. 17-2 at ¶¶ 10-18, 36-40; R. Doc. 1-2 at ¶¶ 7.1.11.1 and 7.1.12.2).
[27] R. Doc. 17 at p. 15 (*citing* R. Doc. 17-2 at ¶¶ 26-31; R. Doc. 17-2 at p. 11; R. Doc. 1-3).
[28] R. Doc. 17 at p. 15 (*citing* R. Doc. 17-2 at ¶¶ 26-31).
[29] R. Doc. 17 at p. 16 (*citing* R. Doc. 17-2 at ¶¶ 32-33; R. Doc. 17-2 at pp. 12-16).
[30] R. Doc. 17 at p. 16 (*citing* R. Doc. 17-2 at ¶¶ 34-35).
[31] R. Doc. 17 at p. 16 (*citing* R. Doc. 17-2 at ¶ 23).
[32] R. Doc. 17 at p. 16 (*citing* R. Doc. 17-2 at ¶¶ 42-49).

Further, while the Petition alleges, generally, that CB&I was negligent in the installation, inspection, preparation and setup of Wilson's trailer and in performing the ready for occupancy inspection and report on the trailer prior to its release to and occupancy by Wilson, the crux of Plaintiffs' allegations against CB&I is that CB&I's failure to properly maintain Wilson's FEMA trailer caused his death. Not only do the Plaintiffs explicitly state this in their Reply brief,[33] the original Petition alleges that, "In the month prior to Everett Wilson's death, numerous calls and complaints were made regarding the malfunction of the air conditioning and heating system and the thermostat in the Trailer, yet no repairs were made to the system."[34]

At least one court in this Circuit has held that a contractor's failure to comply with the maintenance obligations of a service contract satisfied the "acting under" and "causal nexus" requirements of the federal officer removal statute. *See, In re FEMA Trailer Formaldehyde Products Liability Litigation*, Member Case No. 12-548, MDL No. 07-1873, 2012 WL 1448132, at *3 (E.D. La. Apr. 26, 2012). In that member case, Ann Terrell filed an action in state court alleging that she had been diagnosed with cancer as a result of asbestos exposure while living in an emergency housing unit provided by FEMA after Hurricanes Katrina and Rita. *Id.* at *1. Addressing Terrell's Motion to Remand, the Eastern District held that, "This Court has already held that federal officer removal by FEMA contractors in this litigation was proper based on claims of improper maintenance. *See*, Rec. Doc. 24606." *Id*, at *3. In that prior ruling, the Eastern District held that the "acting under" and "causal nexus" requirements were "easily satisfied" with respect to two of the FEMA contractors because those defendants "were directed by FEMA to install and maintain the plaintiffs' emergency housing units (EHUs) and [] a causal nexus exists between these assigned tasks and the plaintiffs' claims against the contractors (*i.e.*, that the

---

[33] R. Doc. 22 at p. 1 ("Failure to properly maintain the [trailer] is the allegations which caused Mr. Wilson's death.").
[34] R. Doc. 1-1 at ¶ 9.

contractors' negligence in performing these tasks caused and/or increased plaintiffs' exposure to formaldehyde in the units)." *See, In re FEMA Trailer Formaldehyde Products Liability Litigation*, MDL No. 07-1873, R. Doc. 24606 at p. 8. The court also noted that those two defendants "were tasked with transportation, installation, . . . . maintenance and repair … of the units. . . . . Defendants Bechtel and CH2M, at every stage of their involvement, failed to warn the Plaintiff-occupant(s) of each temporary housing unit of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde . . . ." *Id*. (*quoting* MDL R. Doc. 17827-1, ¶¶ 31-51).

The Eastern District further held in that prior ruling that the "acting under" and "causal nexus" requirements were "likewise clear" with respect to another FEMA contractor who was responsible for the transportation, delivery, installation, maintenance and repair of the FEMA trailers. *Id*. at p. 9. With respect to that defendant, the court noted that, "Defendant Madison was required to perform maintenance work on Plaintiff's unit. Defendant Madison negligently failed or refused to provide adequate maintenance work . . . including failing to perform routine work, address concerns of Plaintiffs or warn of dangerous conditions." *Id*. (*quoting* MDL R. Doc. 17826-1 at ¶¶ 4, 45). Turning back to the issue of federal officer removal in Ann Terrell's case, the Eastern District held that, "Shaw's contract with FEMA and the negligent maintenance claims in plaintiff's petition (at the time of removal) are identical in all material respects to the contracts and claims at issue in this previous ruling. Thus, based on the facts and pleadings as they existed at the time of removal, Shaw's removal was proper under 28 U.S.C. § 1442(a)." *In re FEMA Trailer Formaldehyde Produces Liability Litigation*, 2012 WL 1448132, at *3.

The undersigned finds the reasoning in the *FEMA Trailer Formaldehyde* case persuasive, especially in light of the favorability of removal under the federal officer removal statute. As

previously mentioned, the crux of the Plaintiffs' claims in this case is that CB&I failed to properly maintain Wilson's FEMA trailer. The Base Contract between CB&I and FEMA states that, "The contractor shall be responsible for maintaining all interior and exterior components of the unit for up to 180 days until transition to a follow-on, local contractor" and that such maintenance specifically includes, "6.5.1.4 Heating and Cooling System."[35] With respect to these maintenance obligations, the Base Contract provides that, "The contractor shall establish and operate a maintenance request line with a toll-free telephone number for occupants to call and report maintenance problems or check on the status of a maintenance request."[36] The Base Contract specifies that, "The contractor shall respond to routine (non-emergency) maintenance requests within 48 hours. When such 48-hour completion time would expire on Saturdays, Sundays, or holidays, the 48-hour time period shall extend to the following business or work day, as appropriate." The Base Contract requires that, "When responding to routine maintenance requests, the contractor shall complete routine maintenance items requested by the occupant even if they are not on the Task Order."[37] The Base Contract also provides for "preventative monthly maintenance," stating that, "Monthly inspections for each installed unit will begin thirty (30) days after unit is made ready for occupancy (RFO). The contractor shall inspect the interior and exterior for damage and ensure that all components are in working order."[38] With respect to emergency repairs, the Base Contract states:

> Repairs that are necessary to eliminate health, safety or security hazards shall be considered emergency repairs. Emergency repairs shall be initiated within two (2) hours of receipt (24 hours a day, 7 days per week) and the work must be completed as soon as possible. All emergency repair requests received during business hours shall be reported to the COTR immediately. Requests received after

---

[35] R. Doc. 1-2 at p. 10, ¶ 6.5.1.
[36] *Id.* at p. 11, ¶ 6.5.3.
[37] *Id.* at p. 11, ¶ 6.5.5.
[38] *Id.* at p. 11, ¶ 6.5.6.

business hours shall be reported to the COTR by 10:00 a.m. on the following normal workday. Typical examples of issues that may require emergency repair include . . . No A/C (when outside temperature is, or is expected to go above eighty (80) degrees Fahrenheit).[39]

The foregoing contract provisions demonstrate that CB&I was acting under FEMA's direction in its maintenance obligations with respect to the FEMA trailers used after the Baton Rouge Flood. Not only was CB&I required to establish and operate a maintenance request hotline for FEMA trailer residents, CB&I was specifically required to: (1) respond to all maintenance requests made through the hotline within two to forty-eight hours after receipt of the call; (2) perform any routine maintenance work requested through the maintenance hotline; and (3) conduct monthly inspections of the FEMA trailers. The Court finds that these requirements by FEMA constitute the kind of guidance and control that satisfies the "acting under" requirement for purposes of removal under 28 U.S.C. 1442(a)(1). *See*, *Zeringue v. Crane Co.*, 846 F.3d 785, 792 (5th Cir. 2017).

### 3. CB&I Has Established A "Causal Nexus" Between Plaintiff's Negligence Claims and CB&I's Actions Under Color of Federal Office

The Fifth Circuit has explained that for purposes of removal under 28 U.S.C. § 1442(a)(1), the removing party must establish "a nexus, a 'causal connection,' between the charged conduct and asserted official authority." *See*, *Zeringue v. Crane Co.*, 846 F.3d 785, 793 (5th Cir. 2017) (quoting *Jefferson Cty. v. Acker*, 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999)) (internal quotation omitted). The Fifth Circuit has also cautioned that the causal connection need not be "airtight" because such a requirement would "defeat the purpose of the removal statute." *Zeringue*, 846 F.3d at 793 (quoting *Acker*, 527 U.S. at 432, 119 S.Ct. 2069). The Supreme Court has commented that, "it [is] sufficient" for a federal officer in a civil suit to establish the requisite

---

[39] *Id*. at p.11, ¶ 6.5.7.

causal connection by showing that the officer's relationship to the plaintiff "derived solely from [the officer's] official duties." *Zeringue*, 846 F.3d at 793 (quoting *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)). With respect to negligent acts, the Fifth Circuit has held that such acts are within an officer's authority, and within the scope of § 1442, "so long as he does not depart from the course of his duty so that it becomes his personal act." *Zeringue*, 846 F.3d at 793 (quoting *Allman v. Hanley*, 302 F.2d 559, 561 (5th Cir. 1962)).

Given that the thrust of Plaintiffs' negligent maintenance claim is that CB&I failed to repair the air conditioning and heating unit inside Wilson's FEMA trailer after receiving numerous phone calls and complaints from Wilson and the fact that the Base Contract requires CB&I to promptly respond to maintenance calls within 48 hours and to complete the routine maintenance items requested through such calls, the Court finds that a direct causal nexus exists between the Plaintiffs' negligence claims and FEMA's specific directions to CB&I. *See*, *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 2012 WL 1448132, at *5. Further, as in *Zeringue*, CB&I's relationship with Plaintiffs derives solely from CB&I's official authority to provide maintenance for the FEMA trailers, and that official authority *relates to* CB&I's allegedly negligent actions, namely its failure to repair Wilson's air conditioning and heating system despite receiving numerous calls and complaints calls from Wilson. Accordingly, CB&I has established the causal nexus requirement.

### 4. CB&I Has Asserted a "Colorable Federal Defense" to Plaintiff's Claims

The fourth and final requirement necessary for removal under 28 U.S.C. § 1442 is the assertion of a "colorable federal defense." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 400 (5th Cir. 1998) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406-407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)). To satisfy this requirement, "the defendants need not prove the asserted

defense, but need only articulate its 'colorable' applicability to the plaintiff's claims." *Winters*, 149 F.3d at 400. However, "The officer need not win his case before he can have it removed." *Id.* (quoting *Willingham*, 395 U.S. at 407, 89 S.Ct. 1813).

Here, CB&I has raised the government contractor defense. For the government contractor defense to apply, a defendant must establish that: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Zeringue v. Crane Co.*, 846 F.3d 785, 790 (5th Cir. 2017) (citing *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988)). As explained by the Fifth Circuit, "The government contractor defense in *Boyle*, '[s]tripped to its essentials,' is fundamentally a claim that '[t]he Government made me do it.'" *In re Katrina Canal Breaches Litigation*, 620 F.3d 455, 465 (5th Cir. 2010) (quoting *In re Joint E. & S. Dist. N.Y. Asbestos* Litigation, 897 F.2d 626, 632 (2d Cir. 1990)).

### a. Government Approval of Reasonably Precise Specifications

With respect to the first *Boyle* requirement, reasonably precise specifications, "the specifications must be particular to the contractor's work; federal regulations of general applicability will not meet this standard even if they are highly detailed." *Louisiana United Business Ass'n Cas. Ins. Co. v. J&J Maintenance, Inc.*, 133 F. Supp. 3d 852, 859 (W.D. La. Sept. 24, 2015). For the same reasons CB&I satisfies the "acting under" requirement of 28 U.S.C. § 1442(a)(1), CB&I has also shown that the federal government approved "reasonably precise specifications" with respect to CB&I's contractual obligations to maintain the FEMA trailers. *See, Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 400 (5th Cir. 1998) ("We need not again delve into the specifics contained in the record, as we have done *supra*, to determine whether

the defendants' proffer of the government contractor defense satisfies the third requirement for removal under § 1442; we simply note that the evidence we have earlier described amply supports the defendants' assertion that the specifications for Agent Orange were provided by the government and that the product conformed to those specifications."); *City of Walker v. Louisiana Through Department of Transportation and Development*, Civ. A. No. 17-55-KDE-EWD, 2017 WL 3431922, at *16 (M.D. La. June 28, 2017), *aff'd in part, appeal dismissed in part sub nom.*, *City of Walker; City of Denham Springs; Williamson Eye Center (APMC); Timothy John Kinchen; Shannon Farris Kinchen v. State of Louisiana, through the Dept. of Transportation and Devt.*, Civ. A. No. 17-30768, 2017 WL 5953511 (5th Cir. Nov. 30, 2017) ("For the same reasons James Construction has failed to establish that it 'acted under' a federal officer's directions, James Construction also fails to establish that the federal government approved 'reasonably precise specifications' related to the hydraulic design for the Geaux Wider project."); *See also, Weis v. DSM Copolymer, Inc.*, 160 F. Supp. 3d 954, 972 (M.D. La. 2016 ("[A]s discussed above, DSM has not provided any 'precise specifications' approved by the United States regarding the use of asbestos, much less how any asbestos used by DSM conformed to those specifications.").

**b.  Conformity of CB&I's Work to Government-Approved Specifications**

The second *Boyle* requirement "is satisfied when the removing party demonstrates that it has complied with the government's specifications." *Savoie v. Pennsylvania General Insur. Co.*, Civ. A. No. 15-1220, 2017 WL 2391264, at *6 (E.D. La. June 2, 2017).  CB&I asserts that it "conformed in all aspects to the Government's specifications and performed this government work under FEMA's supervision and control.  FEMA inspectors routinely monitored the work performed under the government contracts, and FEMA maintained approval and enforcement

authority."[40]  With respect to FEMA's specifications regarding CB&I's obligation to maintain the FEMA trailers, CB&I asserts that, "FEMA required CB&I to operate a maintenance hotline that it routinely monitored, and FEMA provided direction and instruction regarding the maintenance hotline and issues related to the response time."[41]  These allegations are supported by the Declaration of David L. Means, CB&I's "Task Order Manager for the August 2016 Flood relief in Louisiana," submitted by CB&I.[42]  Plaintiffs, however, assert that, CB&I's liability is not an act stemming from its compliance with "reasonably precise government specifications" because "the government's contract did not make CBI do the harm that caused Mr. Wilson's death."[43]

Despite Plaintiffs' assertions to the contrary, CB&I has made a colorable showing that it complied with FEMA's "reasonably precise specifications" regarding CB&I's maintenance obligations set forth in its contract with FEMA.  CB&I has submitted a declaration from a CB&I employee and a copy of the Base Contract, both of which support CB&I's contention that its actions complained of in the state court Petition, specifically CB&I's operation of the maintenance hotline and its response to calls made thereto, were performed pursuant to the specific requirements set forth by FEMA in the Base Contract.  CB&I has also shown that FEMA exercised significant oversight with respect to CB&I's maintenance obligations.  Further, Plaintiffs have submitted testimony from a Congressional hearing which shows that representatives from FEMA and CB&I communicated on a weekly, if not daily, basis between August 2016 and January 2017 regarding problems with the maintenance hotline operated by CB&I.[44]  Thus, FEMA did not "merely accept[], without any substantive review or evaluation, decisions" made by CB&I with respect to

---

[40] R. Doc. 1 at ¶ 12 (*citing* R. Doc. 1-2 at pp. 18-19, 25).
[41] R. Doc. 17 at p. 9 (*citing* R. Doc. 17-2 at ¶ ¶ 45-49).
[42] R. Doc. 17-2 at ¶ 3.
[43] R. Doc. 22 at p. 1 (internal footnote omitted).
[44] R. Doc. 22 at pp. 2-5.

its operation of the maintenance hotline.  *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 401 (5th Cir. 1998) (quoting *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1480 (5th Cir. 1989)).  As previously discussed, CB&I is not required to win its case before it can have it removed.  *Zeringue v. Crane Co.*, 846 F.3d 785, 789-90 (5th Cir. 2017) (quoting *Jefferson Cty. v. Acker*, 527 U.S. 423, 431-432, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999)).  As such, CB&I has made a colorable showing of the second *Boyle* factor.

### c.   Whether CB&I Warned the Government of Any Known Defects

The third *Boyle* factor requires that the government contractor warned the government of any dangers or defects in the work that were known to the contractor but not to the government. *Louisiana United Business Ass'n Cas. Ins. Co. v. J&J Maintenance, Inc.*, 133 F. Supp. 3d 852, 860 (W.D. La. Sept. 24, 2015) (citing *Boyle*, 487 U.S. at 512, 108 S.Ct. 2510).  "This 'eliminate[s] any incentive that this defense may create for contractors to withhold knowledge of risks.'"  *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 421 (5th Cir. 2001) (quoting *Stout v. Borg-Warner Corp.*, 933 F.2d 331, 334 (5th Cir. 1991)).  A removing defendant can satisfy this prong for removal purposes by putting forth evidence that the government was aware of the dangers.  *Savoie v. Pennsylvania General Insur. Co.*, Civ. A. No. 15-1220, 2017 WL 2391264, at *7 (E.D. La. June 2, 2017) (citations omitted).

While Plaintiffs allege that CB&I was negligent in its maintenance of Wilson's FEMA trailer, as CB&I points out, Plaintiffs have not alleged that CB&I knew of dangers that were unknown to the government and withheld that information, nor is there any evidence that such occurred.[45]  CB&I has submitted evidence to show that it was required to "establish and maintain maintenance records" for each FEMA trailer and to "provide maintenance information" to FEMA

---

[45] R. Doc. 17 at p. 9.

in daily and weekly reports.[46]  Further, Plaintiffs have submitted evidence to show that FEMA and CB&I communicated on a weekly, and sometimes daily, basis in September and October of 2016, just before Wilson's death, regarding various problems with the maintenance hotline, and communicated on a monthly, and sometimes weekly, basis from August 2016 through January 2017 regarding trailers with malfunctioning air conditioning and heating systems.[47]  As such, CB&I has met the third *Boyle* requirement by making a colorable showing that the government was aware of the dangers presented by the malfunctioning maintenance hotline, as well as the air conditioning and cooling systems used in the FEMA trailers.

Based on the foregoing, CB&I has raised a "colorable federal defense" in this case by asserting the government contractor defense.  As explained by one of our sister courts, CB&I need not convince the Court that it will ultimately prevail in its defense in order to have it tried in federal court.  *In re FEMA Trailer Formaldehyde Products Liability Litigation*, Member Case No. 12-548, MDL No. 07-1873, 2012 WL 1448132, at *6 (E.D. La. Apr. 26, 2012).  Instead, CB&I need only establish that its claim to the federal contractor defense is "colorable."  *Id*.  The Court finds CB&I has done so.

## Conclusion

Based on the foregoing, CB&I has shown that all of the requirements for removal under 28 U.S.C. § 1442(a)(1) are met in this case.  CB&I has shown that: (1) it is a person within the meaning of the statute; (2) it "acted pursuant to a federal officer's directions;" (3) a "causal nexus" exists between CB&I's actions under color of federal office and the Plaintiffs' claims; and (4) it has "a colorable federal defense" under the government contractor defense.  *See, Zeringue v. Crane Co.*, 846 F.3d 785, 789 (5th Cir. 2017).  Further, while the general removal statute is to be strictly

---

[46] R. Doc. 1-2 at ¶¶ 6.5.10 and 6.5.11.
[47] R. Doc. 22 at pp. 2- 5.

construed in favor of remand, the federal officer removal statute is to be construed broadly "to allow a federal court to determine the validity of an asserted official immunity defense." *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998) (citing *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)).  Accordingly, removal was proper in this case.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that Plaintiffs' Motion to Remand[48] should be **DENIED**.

Signed in Baton Rouge, Louisiana, on February 21, 2018.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[48] R. Doc. 11.